Petition of **PETROLEUM TANKERS CORPORATION, as owner of the MOTOR TANK VESSEL EMPRESS BAY, in a cause of exoneration from or limitation of liability.**

Petition of **REDERI A/B TRANSATLANTIC [Per Carlsson, Mgr.] for exoneration from or limitation of liability.** '

United States District Court
S. D. New York.
April 4, 1960.

Macklin, Speer, Hanan & McKernan, New York City, for petitioner Petroleum Tankers Corp., Martin J. McHugh, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for petitioner Rederi A/B Transatlantic, J. Ward O'Neill, Robert M. Julian, New York City, of counsel.

Mahar & Mason, New York City, for claimant Gladys H. Ahrens, Frank C. Mason, New York City, of counsel.

LEVET, District Judge.

Petroleum Tankers Corporation, as owner of the Motor Tank Vessel Empress Bay, and Rederi A/B Transatlantic, as owner of the Motor Vessel Nebraska, petitioned for exoneration from or limitation of liability for damages arising from the collision of the two vessels in the East River, New York on June 25, 1958.

This was a hearing on damages arising from the death of Otto H. Ahrens, a cook on the Empress Bay, as a result of the collision. The petitioners have each conceded liability for the accident which caused decedent's death. This claim was brought by the deceased's administratrix, his widow, Gladys H. Ahrens, and seeks recovery for pecuniary loss by reason of the death as well as for funeral expenses. The inquiry in the case, therefore, is the amount of the pecuniary loss to the widow.

After hearing the testimony and examining the proof of the parties and after consideration of the briefs and proposed Findings of Fact and Conclusions of Law submitted herein, I hereby make the

following Findings of Facts and Conclusions of Law:

## FINDINGS OF FACT

1. Claimant's decedent and husband, Otto H. Ahrens, met his death on June 25, 1958, while employed as a cook on board the Motor Tanker Empress Bay. (SM 4)

2. Decedent's death resulted from a collision between the Motor Tanker Empress Bay, owned by the petitioner Petroleum Tankers Corporation, and the Motor Vessel Nebraska, owned by the petitioner Rederi A/B Transatlantic.

3. The liability of the petitioners, Rederi A/B Transatlantic, as owner of the Motor Vessel Nebraska, and Petroleum Tankers Corporation, as owner of the Motor Tanker Empress Bay, to the claimant was stipulated. (SM 2)

4. Gladys H. Ahrens was appointed administratrix of the goods, chattels and credits of Otto H. Ahrens on August 15, 1958 by letters issued to her by the Surrogate's Court of Richmond County, State of New York.

5. On June 25, 1958, the said Gladys H. Ahrens was the lawful wife of said Otto H. Ahrens and had been such wife since their marriage on November 4, 1942; there were no children of the marriage. (SM 5)

6. At the time of his death, said Otto H. Ahrens was 44 years old, having been born on May 14, 1914; Gladys H. Ahrens, at the time of her husband's death, was 45 years old, having been born on November 4, 1912. (SM 5)

7. Following her husband's death, claimant incurred and paid funeral expenses of a total sum of $2,560. (SM 5, 6)

8. The decedent had been employed as a cook by the owner of the Empress Bay for almost three years prior to his death. (SM 8) He generally worked on the vessel five days a week. The claimant met her husband at the Poling Dock in Staten Island on Friday nights, drove him home to their address at 33 High Street, Staten Island, where he stayed until Sunday night, when she brought him back to the dock. (SM 8, 9, 10) The decedent did not drive the car and had no license. (SM 16) For this and other purposes claimant used her car and paid the expenses thereof herself. (SM 10)

9. Mrs. Ahrens worked as a clerk at the United States Public Health Service Hospital, Staten Island. (SM 13) Her average gross pay during 1955 and 1956 was approximately $4,200.

10. Mr. Ahrens' pay check was cashed at the Capitol Market on Saturday mornings when the husband and wife went for groceries. (SM 12) They paid $100 a month rent. (SM 13) Electric and gas bills were about $14; telephone bills, $6; food costs about $20 weekly (SM 14), of which $10 was spent on weekends; miscellaneous operating expenses were about $100 per year.

11. Mr. Ahrens seldom went out and the couple rarely entertained. (SM 23, 24) He wore Khaki pants and a tee shirt on the ship and sports clothes going and coming from the ship. His clothing expenditures did not exceed $263 per year. Union dues were $80 a year. He took $5 with him when he went to the ship. His health was good. (SM 25)

12. Mrs. Ahrens and her husband filed separate tax returns for 1956 and 1957. Mr. Ahrens used the short form. (SM 25, 26) In 1956, his gross and net incomes were as follows:

| FROM | GROSS | WITHHELD | NET |
| --- | --- | --- | --- |
| Petroleum Tankers Corporation | $3,923.42 | $553.60 | $3,378.82 |
| Conners Standard Marine Corporation | 1,303.82 | 181.80 | 1,122.02 |
| TOTALS | $5,227.24 | $735.40 | $4,500.84 |

Social security payments amounted to $108.57. (SM 27, 28; Exhibit 2)

13. In 1957, Otto H. Ahrens' gross and net incomes were:

| FROM | GROSS | WITHHELD | NET |
|---|---|---|---|
| Petroleum Tankers Corporation | $5,783.56 | $861.10 | $4,827.96 |

Social security payments amounted to $94.50. (SM 29, 30; Exhibits 3, 4)

14. In 1958, the gross income to June 25th, the date of decedent's death, was $3,187.95; withholding, $456.20; net, $2,731.75. Social security payments amounted to $77.03. (SM 33) The decedent paid $40 into a pension fund. (SM 89)

15. A contract effective February 1, 1957 and continuing to January 31, 1959, provided for union daily rates of $24.06 for cooks, but the new contract, effective on February 1, 1959 to January 31, 1961, provided for a daily wage of $26.94. (SM 36, 37)

16. The aid and assistance rendered by Ahrens to his wife consisted of cooking at home during his eleven-day vacation (SM 43) and once in a while on a weekend. He dried the dishes. (SM 44)

17. Mr. and Mrs. Ahrens had a joint savings bank account. (SM 11) $20 every two weeks was deposited in a Christmas Club. (SM 73) When the annual check from this source was received it was deposited in the joint savings account. (SM 74) The source of it seemed uncertain. (SM 73) At the time of her husband's death, this account, Mrs. Ahrens said, contained approximately $4,000, of which she estimated $3,500 came from her husband. (SM 75) Actually, the amount of this balance was $3,204. (SM 83; Exhibit 10)

18. The decedent's work was interrupted by a strike running from February 1 to March 8, 1957. From September 7 to October 4, 1957, the ship was laid up for repairs and out of commission. (SM 97, 98) He had eleven days vacation in 1956.

19. The life expectancy of decedent was 26.69 (United States Life Tables, 26, 34) and the reasonable period of work expectancy would be until age 65, leaving a period of approximately 22 years involved in the period of prospective loss.

20. The net amounts which would reasonably have been available to Mr. and Mrs. Ahrens during the 22 year period are:

First year ...................$5,143
Second year .................. 5,330
Third and subsequent
20 years ................... 5,318

21. The claimant could reasonably be expected to receive the benefit of one-half the average net income for 22 years, or an average of $2,655 per year for a total of $58,400.

22. A reasonable long-term rate of return on the investment of this sum for Mrs. Ahrens, a person unskilled in investments, is 3%. This is a reasonable rate of discount to apply to the total award so that the net amount allowable for loss of earnings is $42,522.

23. There is no evidence of any pecuniary loss to the claimant by reason of the deprivation of any aid and assistance which was customarily rendered by the deceased to her.

24. Mrs. Ahrens would be required to pay income tax in the estimated amount of $2,500 (as reduced by estimated discount) on the interest portion of the income received from the investment of the award.

25. The total award of damages which would compensate the claimant for the pecuniary losses suffered by her is $48,000. This includes funeral expenses, loss of earnings and an allowance for income tax to be paid on the interest portion of the discounted amount.

## DISCUSSION

The measure of damages under both the Jones Act, Title 46 U.S.C.A. § 688, governing the liability of the deceased's employer, Petroleum Tankers Corporation, and the Decedent Estate Law of the State of New York, McKinney's Consol. Laws, c. 13, § 132, which governs the liability of Rederi A/B Transatlantic, is the pecuniary loss to the widow resulting from the death of the decedent.

The statement of the Court of Appeals for the Second Circuit in estimating the proper measure of damages in a wrongful death case, O'Connor v. United States, 2 Cir., 1959, 269 F.2d 578, is relevant here: "The principal considerations in determining what pecuniary loss was sustained by the wife and child of the deceased in this case by reason of his death are the decedent's earning capacity, that is, what he might under all the circumstances reasonably be expected to earn had he remained alive, and the extent to which the wife and child might logically and reasonably have been expected to share in it. What the decedent was actually earning at the time of his death is a major factor in determining earning capacity." (p. 582)

## EARNINGS

The available records indicate that the gross income of the decedent was as follows:

| | | |
|---|---|---|
| 1956 | $5,227.24 | (Ex. 2) |
| 1957 | 5,783 | (Ex. 3) |
| 1958 (½ year) | | |
| $3,187 | 6,374 | (Ex. 5) |

It is also reasonable to predict that the gross earnings of decedent after January 31, 1959, by reason of the new contract, would have been somewhat greater. The daily rate was increased from $24.06 to $26.94. I estimate the earnings for 1959 as follows:

1 month (January) at 1/12th of $6,374 (1959 earnings) .......$ 531

11 months (February–December 1959)

11 months at $531 ............$5,841

Proportionate increase based on new contract rates:

$$\frac{26.94}{24.06} \times \$5,841 \dots\dots\$6,378$$

Total 1959 Gross Income ........................$6,909

---

On the same basis the estimated gross income for 1960 would be $6,948. This produces the following results as to gross income reasonably anticipated at date of death:

First Year:
July 1, 1958–June 30, 1959
6 months 1958 ....$3,187
6 months 1959 .... 3,454 ....$6,641

Second Year:
July 1, 1959–June 30, 1960
6 months 1959 ....$3,454
6 months 1960 .... 3,474 ....$6,928

Third and Subsequent Year:
July 1, 1960–June 30, 1961
12 months ........$ 580 .....$6,960

## LIFE and WORK EXPECTANCIES

The decedent was born on May 14, 1914 and was therefore 44 years old at the time of death. The wife was 45 years old.

The life expectancy of decedent was 26.69 years and that of his wife was 26.90 years. (United States Life Tables, pp. 26, 34)

It is my opinion that in the work pursued by the decedent a reasonable period of expectancy of employment would be to the age of 65. Consequently, the reasonable period of loss to the surviving wife is approximately 22 years.

## DEDUCTIONS FROM GROSS INCOME

The following computations show my estimate of income tax and social security deductions to arrive at the total amount of the decedent's available income:

### FIRST YEAR

Gross Income .................................... $6,641
       Less standard 10% deduction ................... 664
                                      $5,977

Less one exemption (decedent, since he filed a separate return) .................... 600
                                        $5,377

(a) Federal tax on $5,377
      On $4,000 ...................... $840
      26% of $1,377 ................. 358 .......... $1,198
(b) Social Security
      2¼% of $6,641 ............................. 149
(c) New York State Income Tax
      Short form on $5,977 ......................... 151

      Total Deductions (a), (b), (c) ............. $1,498

      Total Gross Income ............................. $6,641

      Total deductions (a), (b), (c) ................... $1,498

      NET AVAILABLE INCOME .................. $5,143

### SECOND YEAR

Gross Income ................................... $6,928
       Less standard 10% deduction ................... 692
                                          $6,236

       Less one exemption ......................... 600
                                        $5,636

(a) Federal tax on $5,636
      On $4,000 ...................... $840
      26% of $1,636 ................. 425 .......... $1,265
(b) Social Security
      2½% of $6,928 ............................. 173
(c) New York State Income Tax
      Short form on $6,236 ......................... 160

      Total Deductions (a), (b), (c) ............. $1,598

      Total Gross Income ............................. $6,928

      Total deductions (a), (b), (c) ................... 1,598

      NET AVAILABLE INCOME .................. $5,330

## THIRD AND SUBSEQUENT YEARS

Gross Income ....................................$6,960
    Less standard 10% deduction ..................  696
                                         $6,264
    Less one exemption ..........................  600
                                         $5,664

(a)  Federal tax on $5,664
      On $4,000 ......................$840
      26% of $1,664 ................  432..........$1,272

(b)  Social Security
      3% of $6,960 ..................................  208

(c)  New York State Income Tax
      Short form on $6,264 ........................  162
            Total Deductions (a), (b), (c) .............$1,642
            Total Gross Income .............................$6,960
            Total deductions (a), (b), (c) ....................  1,642
            NET AVAILABLE INCOME ..................$5,318 [1]

Thus, the net amounts which would reasonably have been available for husband and wife during the pertinent period of 22 years are as follows:

First year ...................$5,143
Second year .................  5,330
Third and subsequent 20 years ...  5,318

The next problem is to determine what portion of these amounts would have been reasonably devoted to the wife's pecuniary benefit.

The administratrix argues that the balance of the net income above the personal expenses of the decedent and half of the household expenses should be the measure of this benefit. The personal expenses, as conceded by the administratrix, were as follows:

Clothes .......................$263
Pocket and gift money ...........  350
Union dues ....................    80
Pension .......................    40
Small personal items ............    17
                       $750

The household expenses, as conceded by administratrix, were as follows:

Rent—$100 per month .........$1,200
Gas and electric—$14 per month ..  168
Telephone—$6 per month .......    72
Food—$20 per week ............  1,040
Miscellaneous ..................  100
                      $2,580

Thus, the claimant would contend that the amount available to her pecuniary benefit (assuming the *first year's net available income* as above estimated by me) would be computed as follows:

Net available income (see above) ........................$5,143
    Deductions for husband
    Husband's personal expenses (see above) ......$  750
    ½ of total household expenses of $2,580 ........  1,290
    Total deductions ....................................  2,040
          AVAILABLE FOR WIFE ..........................$3,103

1.  This appears to be less than the second year by reason of increased Social Security rate.

For the *second year* the computation on a like basis would be as follows:

Net available income (see above) ..........................$5,330

Deductions for husband

Husband's personal expenses
(on the assumption that in-
creased income does not re-
sult in increased expenses) ..................$  750

½ of total household
expenses of $2,580 ......................... 1,290

    Total deductions ..................................... 2,040

       AVAILABLE FOR WIFE ..........................$3,290

———◆———

For the *third and subsequent years*
the computation would be as follows:

Net available income (see above) ..........................$5,318

Deductions for husband

Husband's personal expenses ................$  750

½ of total household ex-
penses of $2,580 ......................... 1,290

    Total deductions ..................................... 2,040

       AVAILABLE FOR WIFE ..........................$3,278

———◆———

This theory of claimant, I believe, however, is not tenable here. The fact that a certain sum above personal expenses and a share of the household expenses remained after taxes, etc. is not proof that she received or would receive the benefit thereof. Records produced by her were sparse. There is some evidence of a joint savings account and it would appear that a substantial portion thereof (which at the time of death amounted to $3,204.00) came from the husband's earnings. There was no assurance that the husband would refrain from drawing on this account or would continue to deposit therein.

■ Hence, I believe that claimant has not produced affirmative proof to establish by a fair preponderance of the credible evidence that the reasonable pecuniary damage exceeds 50% of the net amount available to both husband and wife.

The wife herself was working and from all indications would have continued to work. Increased wages (of the husband) usually mean increased spending. There is no convincing proof that the amount available to the wife should be greater than 50%. See O'Connor v. United States, 2 Cir., 1959, 269 F.2d 578.

■ There is inadequate proof of any substantial pecuniary loss to the wife from the assistance, etc. of the husband. He was home as a rule only weekends. Aside from some help in dish washing and perhaps some in cooking, there was little evidence of any aid or assistance. No award is therefore made. See Meehan v. Central Railroad Company of New Jersey, D.C.S.D.N.Y., 1960, 181 F.Supp. 594.

Consequently, the pecuniary award to the claimant is based as follows:

First year—½ of $5,143 ........$2,572
Second year—½ of $5,330 ...... 2,665
Third and subsequent 20 years—
   ½ of $5,318 ................. 2,659

The average per year for 22 years is $2,655.

## THE DISCOUNT RATE

■ At the present time, with a period of 22 years to run, with the amounts herein involved, it is my opinion that a 3% rate is reasonable. At 3% the discount factor for the 22 year period is 15.937. Consequently, when discounted, the net amount allowable here for the 22 year period is $2,655 (see above), 15.937 (the factor), or $42,522.

The amount of the total award for 22 years of expectancy at $2,655 average per year before discount is $58,400. After discount it is $42,522. The difference of $15,878 represents income necessary to warrant the discount. This is an average of approximately $721 per year. A rough estimate of Mrs. Ahrens' ultimate discounted tax burden on this is approximately $2,500, which is allowed to her.[2] See Meehan v. Central Railroad Company of New Jersey, D.C.S.D.N.Y., 1960, 181 F.Supp. 594.

## SUMMARY

The total award of damages is summarized as follows:

(1) Funeral expenses ......................$ 2,650
(2) Pecuniary loss ......................... 42,522
(3) Income tax allowance on interest
   portion of discounted amount .............. 2,500
   Total .......................$47,672

This is rounded to the sum of ...........................$48,000.

———◆———

■ The claim against Petroleum Tankers Corporation as owner of the Empress Bay is based on the Jones Act and bears no interest. Title 46 U.S.C.A. § 688 et seq; Casey v. American Export Lines, 2 Cir., 1949, 173 F.2d 324, reversed, 2 Cir., 1949, 176 F.2d 337, cert. denied, 338 U.S. 885, 70 S.Ct. 189, 94 L. Ed. 544; Cortes v. Baltimore Insular Line, 2 Cir., 66 F.2d 526, 529.

■ The claim against Rederi A/B Transatlantic as owner of the Nebraska is predicated on the Decedent Estate Law of the State of New York since diversity is the foundation of jurisdiction. Section 132 of the Decedent Estate Law is as follows:

"The damages awarded to the plaintiff may be such a sum as the jury upon a writ of inquiry, or upon a trial, or, where issues of fact are tried without a jury, the court or the referee, deems to be a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought. In every such action now or hereafter pending, in addition to any other lawful element of the damages recoverable, the reasonable expenses of medical aid, nursing and attention incident to the injury causing death and the reasonable funeral expenses of the decedent paid by a husband or wife or next of kin or for the payment of which any such person is responsible, also

---

2. Mrs. Ahrens has been employed for some 18 years as a personnel clerk at the Marine Hospital, Staten Island. Her average gross pay during 1955 and 1956 was approximately $4,200. In July 1958, there was an increase. (SM 38) Assuming a 10% increase, this would mean an annual salary of approximately $4,600.

shall be deemed proper elements of damage. If the decedent leaves surviving a father and a mother, the death of such father prior to the verdict shall not affect the amount of damages recoverable. When final judgment for the plaintiff is rendered, the clerk must add to the sum so awarded, interest thereupon from the decedent's death, and include it in the judgment. The inquisition, verdict, report or decision, may specify the day from which interest is to be computed; if it omits so to do, the day may be determined by the clerk, upon affidavits."

Consequently, interest from June 25, 1958 must be added to the award as against Rederi A/B Transatlantic. See In re Third Avenue Transit Corp., D.C. S.D.N.Y., 1957, 153 F.Supp. 706.

In view of the fact that the same section provides that "[T]he damages awarded to the plaintiff may be such a sum as * * * the court or the referee, deems to be a fair and just compensation for the pecuniary injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought. * * *" I am not convinced that, other than the difference in interest, any discrimination in the amount of the basic award should be made.

As stated by Close, P. J., in Holmes v. City of New York, 269 App.Div. 95, 54 N.Y.S.2d 289 (2nd Dept., 1945), affirmed, 295 N.Y. 615, 64 N.E.2d 449:

"* * * In the wrongful death action, * * * the recovery is limited to the pecuniary loss sustained by the parties for whose benefit the action is brought. (Decedent Estate Law, § 132.) This is measured by the pecuniary loss suffered by those beneficiaries by being deprived of what they would have received from the earnings of the injured party from the date of his death had he lived his full expectancy." (p. 97, 54 N.Y.S.2d p. 292)

In Dimitroff v. State of New York, Court of Claims, 1939, 171 Misc. 635, 13 N.Y.S.2d 458, Judge Greenberg wrote:

"* * * Under Section 132 of the Decedent Estate Law (Laws of 1920, Ch. 919), the damages awarded shall be the amount which the Court or Jury deems to be a fair compensation for the pecuniary injuries resulting from decedent's death, to the person or persons, for whose benefit the action is brought. Wolf v. State, 122 Misc. 381, 202 N.Y.S. 754. 'The main elements to be considered are the age of the decedent, his health, habits, qualities, expectation in life, *earning ability*, income, the prospect of increase of income, the number, age, sex, situation and condition of those dependent on him for support, and his disposition to support them well or otherwise, and the like. Nothing can be allowed for sentiment, for grief or for suffering, even when death was not immediate, but the precise question is *what were the probable chances of pecuniary benefit from the continuance in life of the decedent worth under all circumstances?* Thomas v. Utica & Black River Railroad Co. [6 Civ. Proc.Rep. 353; affirmed], 34 Hun 625 [626]; Id., 98 N.Y. 649.' Arnold v. State, 163 App.Div. 253, 264, 148 N.Y.S. 479, 486." (p. 637, 13 N.Y.S.2d p. 461)

See also Archambeault v. Draper, D.C. E.D.N.Y., 1951, 101 F.Supp. 1004; Rogow v. United States, D.C.S.D.N.Y., 1959, 173 F.Supp. 547; DeVito v. United Air Lines, D.C.E.D.N.Y., 1951, 98 F. Supp. 88 (similar law in Pennsylvania); O'Connor v. United States, 2 Cir., 1959, 269 F.2d 578; Meehan v. Central Railroad Company of New Jersey, D.C.S.D. N.Y., 1960, 181 F.Supp. 594 (Similar statute in New Jersey). But cf. Stokes v. United States, 2 Cir., 1944, 144 F.2d 82; 63 A.L.R.2d 1393.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the subject matter of this action.

2. The claimant is entitled to recover for the pecuniary loss sustained by her as a result of the death of her husband.

3. The claimant has not shown that she could reasonably be expected to receive more than one-half of the expected net earnings of her husband.

4. The claimant has not shown that she has been deprived of any aid and assistance of a pecuniary value by reason of the death of her husband.

5. Under the circumstances of this case, a reasonable rate of discount to be applied to determine the present value of the future pecuniary loss is 3%.

6. Since the claimant can reasonably be expected to pay an income tax on the interest portion of income realized by an investment of the principal sum awarded, an allowance of $2,500 is awarded to properly compensate her for her pecuniary loss.

7. No interest is awarded on the judgment against the Petroleum Tankers Corporation, which is based on the Jones Act.

8. As against Rederi A/B Transatlantic, interest on the sum awarded is to be added from the date of the decedent's death since the liability of that petitioner is based on Section 132 of the Decedent Estate Law of the State of New York.

Accordingly, the award as against both petitioners for the pecuniary loss resulting from the death of Otto H. Ahrens is $48,000. As against Rederi A/B Transatlantic, interest on that sum awarded is to be added from the date of the decedent's death and included in the judgment in accordance with the provisions of Section 132 of the Decedent Estate Law of the State of New York. Satisfaction of the judgment on the principal sum awarded must, of course, be limited to the single recovery of the amount rewarded.

Let a decree be entered in accordance herewith.