**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GARDNER CONSTRUCTION COM-PANY, Respondent.**

**No. 6753.**

United States Court of Appeals
Tenth Circuit.

Oct. 31, 1961.

Samuel M. Singer, Washington, D. C. (Stuart Rothman, Dominick L. Manoli, Marcel Mallet-Prevost and Judith Bleich Kahn, Washington, D. C., on the brief), for petitioner.

Harold B. Wagner, Denver, Colo. (Raymond A. Wagner and Carl A. Wyers, Denver, Colo., on the brief), for respondent.

Before LEWIS and BREITENSTEIN, Circuit Judges, and CHILSON, District Judge.

LEWIS, Circuit Judge.

The National Labor Relations Board as petitioner seeks enforcement of a Board order directed to the respondent Company and entered after a finding that respondent had discharged one Moore for protected union activities in violation of Sec. 8(a) (1, 3) of the Labor Management Relations Act, 1947 as amended, 29 U.S.C.A. § 158(a) (1, 3). The order of enforcement is resisted by the contention that there is insufficient competent evidence to support the Board's finding that Moore's discharge was discriminatorily motivated. The charging party is Local No. 13, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

On July 5, 1960, the respondent Company was engaged in building a part of the Interstate Highway System on Highway 87 in Colorado. The job was non-union. Part of the construction work consisted of hauling mixed dry aggregate from a plant to that portion of the highway then being paved, dumping the load into a hopper of the paving train and then laying the finished mix. The respondent Company had contracted with Giffin Bros., Inc., whereby the latter company made the haul at an agreed unit price. Giffin Bros., Inc. furnished both trucks and drivers including Moore, whose discharge triggered this proceeding, and Scales, a truck foreman, whose testimony is now asserted to be incompetent and an improper basis for the Board's action.

Although Moore and Scales were hired by Giffin Bros., complete and absolute control of the men's activities was thereafter at least shared by the respondent Company. Both men, indeed all men hired by Giffin Bros., were paid directly through the respondent Company's payroll with all required withholdings and employees' records handled by respondent. Supervisory control of the men rested with respondent and disciplinary action, including discharge, was exercised by respondent. Under these circumstances it is clear that both Moore and Scales were "employees" of the respondent Company within the purview of the Labor Management Act. In fact the answer of the respondent admits that " * * * the Respondent discharged its employee Robert Duane Moore."

The testimony regarding incidents leading to Moore's discharge is in sharp and irreconcilable conflict. The testimony of Harry Gardner, respondent's vice president, indicated that the state resident engineer had issued an ultimatum that sloppy truck driving on the project had to be stopped[1] and that to meet this complaint Gardner had decided to fire the first driver who spilled his load; that Moore was the first driver to do so and he was fired for that reason; that the discharge was by truck number and that Gardner had no knowledge of the identity of the driver. Had this version of the incident been accepted as credible by the Board it would clearly negative the existence of an unfair labor practice. N. L. R. B. v. National Paper Co., 5 Cir., 216 F.2d 859; N. L. R. B. v. Whitin Machine Works, 1 Cir., 204 F.2d 883. But Gardner's testimony was in effect rejected in toto by the Board.[2] And although we are now urged

---

[1.] In this Gardner was corroborated by the resident engineer.

[2.] The trial examiner's report, adopted by the Board, stated:

"Gardner's version of this incident, which the undersigned has read and carefully considered, is at variance with that of Salter. In the light of the entire record, the undersigned accepts as substantially correct Salter's version and rejects Gardner's version..

"The undersigned accepts Moore's testimony regarding what transpired on the

to deny enforcement because respondent's evidence gives a complete and satisfactory explanation of the incident we cannot set aside the Board order unless the supporting evidence is insufficient when viewed from that aspect found to be credible by the fact finder. We deem such evidence to be wholly sufficient when so premised. The Board relied upon testimony establishing the following background for Moore's discharge.

Moore was a member of the Teamsters Local No. 13 and wore a union button pinned prominently upon his cap. On July 5, during the lunch period, representatives of the Teamsters were talking to a group of drivers and, at Moore's request, explained the benefits of unionism. Gardner came upon the meeting, brusquely ordered the Union agents off the job-site and told Moore that if he was the one doing the talking he (Moore) was dissatisfied with his job.[3] Moore was given his closing check in midafternoon at Gardner's direction but by the foreman Scales who told Moore that the discharge was occasioned by the noon incident.

No complaint had been made of Moore's driving and prior to the incident he had been used to instruct others in the technique of the work.

Scales' statement that Moore was discharged for union activity was clearly an admission by respondent. Scales was both an employee of the respondent and an agent to effectuate Moore's discharge. The statement was made in the course of his employment and was directly connected with his assigned responsibility. The Board could properly consider the statement as indicative of the reason for Moore's discharge. N. L. R. B. v. Reed & Prince Mfg. Co., 1 Cir., 205 F. 2d 131, 138. The record will also support a finding that respondent knew Moore's identity when his discharge was ordered. Gardner had talked face to face with Moore at noon and a few hours later personally pointed him out as the driver to be fired. He was then within 75 feet of him.

The order must be enforced.

It is so ordered.

---

afternoon of July 5, after the Union representatives and their companions left the job site, as substantially in accord with the facts, and rejects Gardner's testimony with respect to the events of that afternoon mainly on (1) a careful scrutiny of the entire record in the case, all of which has been carefully read, and parts of which have been reread and rechecked several times; (2) the candor with which Moore admitted that he could not be certain as to the dates or the exact words used by Gardner and others; and (3) the fact that Moore particularly impressed

the undersigned as being a person who is careful with the truth and meticulous in not enlarging his testimony beyond his actual memory of what occurred or what was said. On the other hand, Gardner gave the undersigned the impression that he was studiously attempting to conform his testimony to what he considered to be the best interest of Respondent."

3. The testimony of Gardner contrasted sharply with the testimony of Moore and the union agent Salter as to what transpired at this time.