Jesse D. FLEMING, Appellant and
Cross-Appellee,

v.

AMERICAN EXPORT ISBRANDTSEN
LINES, INC., Appellee and
Cross-Appellant.

Nos. 177–178, Dockets 34768, 34805.

United States Court of Appeals,
Second Circuit.

Argued Oct. 8, 1971.

Decided Nov. 19, 1971.

Alan H. Buchsbaum, New York City (Semel, Patrusky & Buchsbaum, New York City, on the brief), for appellant-cross-appellee.

James M. Estabrook, New York City (Lennard K. Rambusch, Haight, Gardner, Poor & Havens, New York City, on the brief), for appellee-cross-appellant.

Before MOORE, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

Plaintiff, a seaman, brought this suit for damages for personal injuries on the grounds of the unseaworthiness of defendant's vessel and of defendant's liability for negligence under the Jones Act, 46 U.S.C. § 688 (1970). Separate trials on the issues of liability and damages were had pursuant to Rule 42(b) of the Federal Rules of Civil Procedure. After plaintiff had presented his evidence, defendant moved to dismiss the complaint and for a directed verdict on both the unseaworthiness and the negligence claims. The district court denied the motions. The jury's special verdict, pursuant to Rule 49(a), ruled that "the defendant was negligent . . . due to the condition of the tabletop or the lack of a guard on the circular saw in the carpentry shop," and that the negligence proximately caused the accident. The special verdict also held that the defendant's ship was unseaworthy by reason of "the condition of the tabletop or the lack of a guard on the circular saw . . . .." The jury found, however, that plaintiff's own negligence had contributed to his injuries to the extent of 20%. The jury awarded plaintiff damages in a gross amount of $35,000, itemized in their special verdict on the issues, $4,300 for loss of past wages; $15,000 for loss of future wages (computed on the basis of the jury's finding that plaintiff's average annual loss of future wages for 10 years was $1,942.50 with the total $19,425 discounted by 5%); $5,700 for past pain, suffering, and disability; $10,000 for future pain, suffering, and disability. The total $35,000 was reduced by 20% to reflect plaintiff's contributory negligence. After the jury verdict as to liability, defendant moved for judgment notwithstanding the verdict which the court denied. After the jury verdict as to damages, the court, 318 F.Supp. 194, granted defendant's motion to set aside the ratably reduced jury award of $12,000 for future loss of earnings as not supported by the evidence, and entered judgment for plaintiff for $16,000. Defendant appeals the denials of its motions for a directed verdict and for judgment notwithstanding the verdict, and plaintiff cross-appeals the grant of defendant's motion to set aside the jury award for future loss of earnings. We affirm the denial of defendant's motions for a directed verdict and judgment notwithstanding the verdict, and grant plaintiff's motion to restore that part of the jury's verdict ($12,000) that the court set aside.

The events surrounding the accident are for the most part not disputed. On December 12, 1967 plaintiff was the chief carpenter on the s/s Constitution, a position he had held since 1961. The ship was undergoing its annual overhaul and Coast Guard inspection in drydock at Hoboken, New Jersey. The chief officer had requested plaintiff to build a shelf for the captain. The design of the shelf, as sketched apparently by the captain, required that a $\frac{3}{8}$ inch groove be cut along the length of a board. In the ship's carpentry shop plaintiff cut to appropriate size, with a portable hand saw, a sheet of plywood. In order to cut the $\frac{3}{8}$ inch groove in the $\frac{3}{4}$ inch plywood, plaintiff used the shop's circular table saw which did not have a protective blade guard. Plaintiff stood at one end of the saw, with the blade spinning toward him, and fed the board through the saw with his right hand while his left hand secured the board on the tabletop. Plaintiff testified that, when he could not feed the board through any further because there was a bandsaw in front of the circular saw, he reached with his right hand to turn off the saw. He further testified that he leaned on

the tabletop with his hip, and the top slipped thus jamming the wood into the teeth of the saw and pulling the wood away from him, and that the momentum of this sudden movement drew plaintiff's left hand which was securing the board into the blade. Plaintiff claimed that the defendant was negligent in not providing a blade guard for the saw and in not regularly inspecting the lug nuts that secured the tabletop to insure that the tabletop would not shift and that defendant's negligence was the proximate cause of plaintiff's injuries.

## I. *The Motions for a Directed Verdict and Judgment Notwithstanding the Verdict*

The evidence supporting plaintiff's claim tended to establish that he had requested the chief officer in 1967 to make certain repairs on the circular saw, that there was no blade guard on the saw at the time of the accident, that the tabletop had never shifted before, that it was the duty of the chief officer to inspect the equipment in the carpentry shop, and that these inspections were casual, involving merely an observation of the saws if they were in operation when the chief officer happened to be in the carpentry shop.

Defendant's evidence consisted of testimony by the two men who alternated as chief officer that plaintiff had never complained of any defects in the saw or requested any repairs, that they had observed no defects in the saw, and that the tabletop did not move when the chief officer leaned on it in connection with filling out the report immediately after the accident. There was also testimony of the second mate who used the machine in June 1967 without observing any defects in the saw, and testimony of a carpentry expert that a blade guard would be unnecessary in a grooving operation.

Defendant contends on this appeal that the evidence established that the accident was solely the result of plaintiff's negligence because he knew of the lack of a guard on the blade, and that the district court erred in allowing the jury to pass on whether the lack of a blade guard was the proximate cause of plaintiff's injuries. We affirm the denial of defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

■ The standard for determining whether plaintiff has presented sufficient evidence to raise a jury question as to defendant's negligence is whether, viewing the evidence in the record in the light most favorable to plaintiff, "there is a complete absence of probative facts to support the conclusion reached" by the jury. Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946). See Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957) which adopted for Jones Act cases the standard established in Rogers v. Missouri Pac. R. R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957) for F.E.L.A. cases. The same test applies in determining the sufficiency of the evidence as to a plaintiff-seaman's contributory negligence. McBride v. Loffland Bros. Co., 422 F.2d 363 (5th Cir. 1970).

■ Applying these standards we find that in the present case there was sufficient evidence to support the jury's conclusion that defendant was negligent and that plaintiff was less than 100% contributorily negligent. There was testimony that the tabletop moved under plaintiff's weight when it had never so moved previously, that the inspections of the saw were infrequent and cursory, that plaintiff had requested that the saw be repaired, and that there was no blade guard. Defendant's proof flatly contradicted plaintiff's assertions that he had requested repairs and that the tabletop moved, thus raising issues of credibility for the jury to resolve. There was evidence by which the jury could have concluded that a guard could have prevented this accident and the lack of one was the proximate cause of the accident.

## II. *The Claim for Future Loss of Earnings*

The district court granted defendant's motion to set aside the verdict granting damages for future loss of earning power, on the ground that the plaintiff offered no proof that he could have earned more than he is presently earning but for the accident. Reviewing the evidence in the light most favorable to the plaintiff, we hold that the district court erred in holding that the jury's verdict was wrong as a matter of law.

Plaintiff was hospitalized from the date of injury, December 12, 1967, to December 18, 1967, and underwent surgery on his left hand. After receiving treatment as an outpatient for five months, plaintiff was certified fit for duty on May 3, 1968, and from May 17 until August 31, 1968 he worked as carpenter on the s/s Constitution. On the latter date the ship was taken out of service. On November 7 plaintiff took a job as a watchman with an annual salary of $7,800. The parties agree that plaintiff's annual salary as a ship's carpenter prior to the injury was $10,000.

Plaintiff testified that, because of the condition of his left hand, he could not perform the type of carpentry done on land because "skilled carpentry requires closing and building and building a flooring and that and I couldn't hold a handful of nails to do a floor or work on the side of a shaft securely." The defendant offered no evidence to rebut this assertion that plaintiff could not work ashore.

A physician, formerly of the United States Public Health Service Hospital on Staten Island, who had treated plaintiff, described plaintiff's injuries and testified that they were permanent. He concluded:

"Because of the almost complete loss in the use of the index finger and the partial loss of the middle finger due to the laceration of the extensor tendon that does not permit him to straighten this finger, I feel that he could not do the type of things that one would expect of a carpenter to do with his other hand, so to speak, even though he is right-handed and he would hold almost all his tools in the right hand; he would have to have a fairly accurate use and dexterity with the opposite hand in order to hold other objects which are a part of the work of a carpenter and because of the fact that he has such limited use out of this hand, I would feel that he cannot do the work of a carpenter."

The plaintiff also testified in response to a question by the court that he had been offered a job as a construction worker working an air hammer but that he had declined it because he "could not hold that job."

Defendant's evidence on the issue of impaired future earning capacity consisted basically of proof that defendant's passenger ships, the only type in defendant's line that carried a carpenter rating, were withdrawn from service in December, 1968 and that the plaintiff had "put in his card" at the union hall but had received no assignment from August 31 until the date he was hired as a watchman. The court ruled that "plaintiff presented no evidence to indicate that there now are jobs available as ship's carpenters, even to employees who have suffered no injury," (footnote omitted), and "since there was no market for plaintiff's talents" (footnote omitted), the award for the impairment of future earning capacity was not supported by evidence sufficient to withstand a motion for judgment notwithstanding the verdict.

 However, we hold that the evidence, viewed in the light most favorable to plaintiff, was sufficient to support the jury's decision that plaintiff's injuries impaired his future earning capacity. Plaintiff testified that he was unable to work as a carpenter ashore, and that in the period from May to August when he worked on the s/s Constitution he needed the help of his mates to perform work he had previously been able to do by himself. Testimony of plaintiff's doctor corroborated this conclu-

sion. Defendant's evidence and the testimony of another physician directly contradicted plaintiff's evidence. The issue was one of credibility and within the province of the jury. The defendant's evidence did not establish that there were no ship's carpenters positions available, but only that there were none available on defendant's ships. There was testimony that at the time of trial there were at least two United States passenger ships sailing out of east coast ports.

 Even assuming that no carpenter jobs were available, in awarding damages for loss of future earning capacity the jury could properly have considered whether plaintiff might have been able to get a job in a different line of work but for the injury. Wiles v. New York, Chicago and St. Louis R. R., 283 F.2d 328, 332 (3rd Cir.), cert. denied, 364 U.S. 900, 81 S.Ct. 232, 5 L.Ed. 2d 193 (1960).

Affirmed in part, and reversed and remanded in part with instructions to reinstate the jury verdict.

MOORE, Circuit Judge (concurring in part and dissenting in part):

I agree with the majority that there is sufficient evidence to sustain the finding of defendant's negligence and the unseaworthiness of its ship; I do not agree with the majority that there is sufficient evidence to support the jury's award of lost future wages in the amount of $12,000.

It is clear that the burden of proving damages is on plaintiff.[1] It is axiomatic that in order to obtain an award of lost future wages plaintiff must present evidence to show that the diminution in his present and expected salary is a consequence of his injury.[2] As this court has said:

The general principle [in determining loss of earning power] is easily stated. The objective is to place the libelant in the same economic position as would have been his if the injury had not occurred. We seek to accomplish this goal by a formula which, stated in oversimplified form, consists of determining what libelant's annual earning power would have been but for the injury, deducting what it will be thereafter, multiplying the result by libelant's expectancy, and discounting the product to present value.[3]

In this case plaintiff did introduce evidence to show that his injury prevented him from fully performing as a

---

1. As Brother Feinberg said as a district court judge: "The burden of proving damage and damages is, of course, on plaintiff. . . ." Candiano v. Moore-McCormack Lines, Inc., 251 F.Supp. 654, 660 (S.D.N.Y.1966), aff'd, 382 F.2d 961 (2d Cir. 1967), cert. denied, 390 U.S. 1027, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968) (admiralty action); Shupe v. New York Central System, 339 F.2d 998, 1000 (7th Cir.), cert. denied, 381 U.S. 937, 85 S.Ct. 1769, 14 L.Ed.2d 701 (1965) (Federal Employers' Liability Act). See also S. A. Peters and Timber, Inc. v. Lines, 275 F.2d 919, 930 (9th Cir. 1960) (breach of contract). Cf. Dixon v. Pennsylvania R.R. Co., 378 F.2d 392, 394 (3d Cir. 1967) (Federal Employers' Liability Act).

2. See McWeeney v. New York, New Haven and Hartford R.R. Co., 282 F.2d 34, 35, 35 n. 3 (2d Cir.), cert. denied, 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960) (en banc) (Federal Employers' Liability Act); Conte v. Flota Mercante Del Es-

tado, 277 F.2d 664, 669 (2d Cir. 1960); O'Connor v. United States, 269 F.2d 578, 582 (2d Cir. 1959) (Federal Tort Claims Act).

3. Conte v. Flota Mercante Del Estado, 277 F.2d 664, 669 (2d Cir. 1960). The courts that have used the Conte formula have specifically established the income that the plaintiff would have earned but for his injury. See Rosa v. A/S D/S Svendborg, 291 F.Supp. 84, 87 n. 3 (S.D. N.Y.1968); Candiano v. Moore-McCormack Lines, Inc., 251 F.Supp. 654, 661 (S.D.N.Y.1966), aff'd, 382 F.2d 961 (2d Cir. 1967), cert. denied, 390 U.S. 1027, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968). See also LeRoy v. Sabena Belgian World Airlines, 344 F.2d 266, 275 (2d Cir.), cert. denied, 382 U.S. 878, 86 S.Ct. 161, 15 L.Ed.2d 119 (1965) (suit arising out of a plane crash, governed by the Warsaw Convention); Brooks v. United States, 273 F.Supp. 619, 627–628, 634 (D.S.C.1967) (Federal Tort Claims Act);

carpenter, but he introduced no evidence to demonstrate that but for the injury to his hand he would have been earning $10,000 per year.[4] Moreover, there is substantial evidence to support the inference that the diminution in plaintiff's yearly salary is in no way a result of the injury to his hand.[5] Because of the retirement of its two passenger ships, defendant no longer employs ships' carpenters.[6] While there were two passenger ships operating out of the East coast owned by other companies at the time of trial, plaintiff offered no evidence to show that jobs for ships' carpenters were available on these ships. When plaintiff left the ship upon which he worked, he "put in his card" for a job as a ships' carpenter or seaman at the union hall; no such jobs were offered to him. The two carpenters who worked with plaintiff on the ship were not working as ships' carpenters at the time of trial: one was employed as a security guard at the union hall earning $7,800 per year, the other as a school custodian (salary unspecified). In short, not only did plaintiff not meet his burden of proving that but for his injury his yearly salary subsequent to the accident would have been $10,000, but also the evidence inescapably gives rise to the inference that plaintiff's injury has no causal relation whatsoever to the diminution in his yearly salary. Clearly "there is a complete absence of probative facts to support the conclusion reached" by the jury.

In my opinion the majority makes two basic errors in its analysis of the future award issue.[7] First, it implies that the impairment of one's ability to perform his vocation is a necessary and sufficient showing to support a future dam-

---

Petition of Petroleum Tankers Corp., 204 F.Supp. 727, 731 (S.D.N.Y.1960) (decided three days after *Conte*). *Cf.* Chesapeake & Ohio Ry. Co. v. Kelly, 241 U.S. 485, 489, 36 S.Ct. 630, 60 L.Ed. 1117 (1916) (Employers' Liability Act).

4. As the majority notes, plaintiff did testify in response to a question from the court that he had been offered a job as a construction worker working an air hammer, but that he had declined it because of the condition of his hand. But this evidence has no probative value on the issue of what plaintiff's salary would have been but for his injury: the plaintiff presented no evidence to establish the yearly income of construction workers working air hammers at the time of trial.

Plaintiff's failure to introduce evidence to establish his "but for" income was deliberate; his theory at trial was that the impairment of his ability to fully perform as a carpenter is a necessary and sufficient basis for recovery of future lost wages:

[The Court]: . . . you have overlooked the fact as urged by Mr. Estabrook, and I think it is appropriate, at least, that there are no jobs available as ship's carpenters; the market has fallen down; the passenger ships are being withdrawn from service.

The problem is this, sir—as I see it, you must show, I believe, and I have tentatively decided to charge, that you must compare his earnings not with what he earned before but what he could earn in his then present occupation if there were such jobs available.

You have a situation here which is not speculative.

It's actual and there is no proof now that ship's carpenters are earning any such sums as they were before the lay aside, before the ships were decommissioned.

Now, what answer have you given to that argument?

Mr. Buchsbaum: My answer to that argument is that even to take the converse, were there jobs of ship's carpenters available, he can't do it. Now that there are no jobs, there is no need to compare.

The only comparable job that we can look for is a carpenter ashore and he cannot work ashore. Transcript at 370–71.

5. *See generally* C. McCormick, Law of Damages § 86, at 300 (1935): "Since the effort is to predict future earning power, the latest data should be used, and therefore it is proper to show that changes have occurred in the prevailing rate of wages in plaintiff's occupation since the injury." (Footnote omitted.)

6. Nor does it employ ships' carpenters on any of its freighters. *See* opinion below, 318 F.Supp. at 201.

7. The majority's third error is its implication that the evidence supports the conclusion that plaintiff would have earned $10,000 per year but for his injury "in a different line of work." But as indi-

age award. Thus, after holding that the evidence, viewed in the light most favorable to the plaintiff, was sufficient to support the jury's future lost wages award, the majority reviews, again, the evidence showing that plaintiff's injury prevented him from fully performing the tasks of a carpenter.[8] But clearly an injured plaintiff must show not only that his injury has impaired his ability to perform as he formerly did, but also that but for his injury he would be earning his former (or some higher) salary.[9] Second, the majority implies that the burden of proving damages is not on plaintiff, but rather that defendant has the burden of proving the nonexistence of damages:[10] "The defendant's evidence did not establish that there were no ship's carpenters positions available, but only that there were none available on defendant's ships."

Because a reasonable jury could not have found on the basis of any evidence that plaintiff's earning capacity was diminished as a result of his injury, I would affirm Judge Levet's decision to strike the jury award of lost future wages.

cated (see note 4, *supra*), plaintiff introduced no evidence to establish that a job paying $10,000 per year was *available* to him in "a different line of work."

8. *See* the paragraph beginning "However, we hold that the evidence, viewed in the light . . . ."

