**Mrs. Bobbie O. BARBER, Administratrix of the Estate of Marvin E. Barber, Deceased**

**v.**

**SEABOARD COAST LINE RAIL-ROAD COMPANY.**

**Civ. A. No. 1095.**

United States District Court, S. D. Georgia, Brunswick Division.

June 6, 1973.

J. S. Hutto, Brunswick, Ga., for plaintiffs.

Bernard N. Nightingale, Brunswick, Ga., for defendant.

## MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND MOTION FOR NEW TRIAL

BREWSTER, District Judge, Sitting by Designation.

The plaintiff brought this action under the Federal Employers' Liability Act to recover damages for the death of her husband, Marvin Barber, sustained while in the course of his employment by the defendant interstate common carrier by railroad. His beneficiaries were his wife, Bobbie Barber, and a minor daughter, Lucretia.

Barber was a repair man for the railroad. His work required him to travel over a considerable area. The railroad furnished him a pickup truck for his use in going from place to place, as he was needed. Before it was delivered to him, the railroad made additions to the back part of the body so it would be suitable for carrying tools and equipment necessary to make the repairs.

Barber was killed in a collision on a public highway between the railroad's truck being driven by him and a large trailer-van vehicle. The trucks were traveling in opposite directions on a wet highway when the railroad's vehicle suddenly crossed over on the other vehicle's side of the road and collided with it.

At the outset, the railroad contended that the case did not come within the purview of the Federal Employers' Liability Act; but, at a pre-trial hearing, its counsel conceded with commendable frankness that suit was properly brought under the Act.

The jury returned its verdict in the form of answers to special interrogatories finding (a) that Barber's death was caused by the negligence of the railroad in furnishing him with a truck with a defective steering mechanism on

the occasion in question; (b) that Barber was not guilty of contributory negligence; (c) and that plaintiff was entitled to recover a total of $107,250.00 damages, $80,250.00 of which was for the use and benefit of the minor daughter, and $27,000.00 for the use and benefit of the surviving wife.

### Motion for Judgment Non Obstante

The railroad has filed a motion for judgment notwithstanding the verdict based upon the contention that the evidence shows each of the following as a matter of law: (1) Barber's death was not caused by any negligence on its part. (2) His death was caused solely by his own contributory negligence.

■ No transcript of the evidence is available to the Court at this time, so it is not practical to set out the evidence on this matter. If there is an appeal, the evidence can be quoted and summarized in the briefs of the parties with appropriate page references to the record. The Court is definitely of the opinion that the issues of negligence, contributory negligence and causation were all questions of fact for the jury.

While there can be cases brought under the Federal Employers' Liability Act where it would be appropriate to instruct a verdict for the railroad on the ground that the issues of negligence and causation [1] were established in favor of the railroad as a matter of law, the Supreme Court has made it clear that such cases are exceedingly rare. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1956). In that case, the Court pointed out that Congress had made clear its intent that the test for determining the existence of a jury question on the issues of negligence of the parties and of causation in F.E.L.A. cases was significantly different from that in ordinary common-law negligence actions. 352 U.S., at 509-510, 77 S.Ct. 443. The Court said that in a F.E.L.A. action "The test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest in producing the injury or death for which damages are sought." 352 U.S., at 506, 77 S.Ct., at 448. The opinion points out that frequent instructed verdicts in the early years of the Act indicated that courts had not recognized the full impact of the congressional intent that the issues of negligence and causation should seldom be taken from the jury. " . . . . Congress corrected this by the 1939 amendments and removed the fetters which hobbled the full play of the basic congressional intention to leave to the fact-finding function of the jury the decision of the primary question raised in these cases—whether employer fault played any part in the employee's mishap." The Court's strong support of that congressional intent is emphasized in the following statement taken from the concluding portion of the opinion: " . . . . The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury *in all but the infrequent cases* where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury. . . ." 352 U. S., at 510, 77 S.Ct. at 450. (Emphasis added).

The Rogers case has been cited many times in subsequent opinions of both federal [2] and state appellate courts. It is not necessary to list or discuss any of them because they have uniformly followed the Rogers decision.

The railroad's contention that the evidence shows as a matter of law that the plaintiff was guilty of contributory neg-

---

1. To bar recovery, the contributory negligence would, of course, have to be the sole cause of the employee's injuries.

2. Page v. St. Louis Southwestern Ry. Co., 312 F.2d 84 (1963), is a Fifth Circuit Court of Appeals case which discusses the Rogers opinion at length and gives full application to it.

ligence which was the sole cause of his death is amazing in view of evidence that it had urged in prior litigation growing out of the same collision that the *sole* cause thereof was a defective steering mechanism in the vehicle it had furnished the plaintiff.

It was some months after the accident before the present case was brought.[3] However, a common-law negligence action for damages for personal injuries was promptly filed against the railroad by each of the two occupants of the large tractor-van truck involved in the collision. The basis of the claim of liability in each of those cases necessarily had to be that the collision was proximately caused by the negligent driving of the railroad's truck by its employee, Barber. The railroad not only contested that theory of liability, but urged as an affirmative defense that the collision was "*solely* and proximately caused by the defects in the steering mechanism of defendant's practically new vehicle, resulting from faulty and improper manufacture of the assembly of defendant's vehicle by the manufacturer thereof, that defective and faulty and improper manufacture or assembly being unknown to, and not available in the exercise of ordinary care by, defendant, its driver, agents, servants and employees prior to the collision sued for." [4] (Emphasis added).

That defense was not a happenstance. It was urged only after an investigation and analysis of the collision by Arthur G. Gautreau, an expert accident analyst engaged to assist the railroad in the preparation and presentation of its defense in those cases.

The common-law negligence actions were settled, and the railroad was then faced with the present suit which urged as a basis for liability that the collision was caused by the railroad's negligence in furnishing Barber with a vehicle equipped with a defective steering mechanism. Part of the proof offered in support of that theory was the portion of the answer in the common-law negligence cases to the effect that the sole cause of the collision was a defect in the steering mechanism, and the testimony of Gautreau, the expert accident analyst mentioned above. The railroad was not content with contending that it had neither active nor constructive knowledge of the defect. It made a 180° turn by employing another expert analyst who testified that there was no defect in the steering mechanism.

The Court is of the opinion that contributory negligence and its causation would be jury issues even in the absence of the railroad's statement as to sole cause in the other litigation. But there can hardly be any question about it where there was written evidence that the railroad had made the solemn claim before another court that the collision was not caused by any negligence of Barber, but was caused *solely* by the defective steering mechanism on its truck. The jury's findings in this case merely followed the contention of the railroad in the common-law negligence cases against it growing out of this same collision. Under these circumstances, it can hardly be said that "there is a complete absence of probative facts to support the conclusion reached." Fleming v. American Export Isbrandtsen Lines, Inc., 2 Cir., 451 F.2d 1329, 1331 (1971), citing Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

The motion for judgment n. o. v. is accordingly overruled.

### The Motion for New Trial

The motion for new trial urges that:

(a) The verdict as a whole is contrary to law, lacks sufficient support in the evidence, and is against the weight of the evidence.

---

3. The cause for the delay may have been the initial impression that injuries sustained by a railroad employee in a vehicular collision on a public highway were not covered by the Federal Employers' Liability Act.

4. This quotation is taken from the answer of the railroad in one of the cases which was introduced in evidence in this case as an admission against interest.

(b) The award of damages is excessive.

(c) It was error to admit the testimony of Bobbie Barber that her husband told her the subject truck was in the shop.

(d) It was error to admit the testimony of the plaintiff's witness, Gautreau, to the effect that R. E. Perry told him that there had been prior trouble with the steering mechanism of the subject truck.

The Court is of the opinion that there is no merit in any of these grounds.

The cases cited in the discussion of the motion for judgment n. o. v. are authority for overruling the contentions listed in paragraph (a) above.

█ The claim that the jury award of damages is excessive is almost frivolous. A much larger verdict would have been supported by the evidence as to the ages of Barber, his widow and his minor child of tender years at the time of the collision, to his devotion to them, to his earning capacity and condition of health, and to the other factors properly considered in arriving at the amount of damages due in a case of this kind.

The other two contentions deal with the admission of testimony over the defendant's objection. As has been previously mentioned, the Court has no transcript of all or any part of the proceedings. The court reporter who took this case works for another judge. The testimony objected to will therefore be given in substance, as the Court remembers it after having tried several intervening cases.

As a railroad equipment repair man who was subject to call to any place in the Waycross Division of the railroad at any time he was needed, Barber was furnished by his employer with a truck on twenty-four hour a day basis. Barber kept the tools and equipment necessary to do his work in the truck at all times. Under the circumstances, he had

the same truck constantly unless it had to be in the shop. On those exceptional occasions, he was furnished with a similar truck for temporary use.

The truck Barber was driving at the time of the collision was not a very old one, but he had been using it regularly for some time. On one occasion after that truck had been assigned to him, he came home in the old truck which he had formerly used. He remarked to his wife, Bobbie Barber, that he was driving the old truck because the newer one was in the shop. Mrs. Barber's testimony as to that statement was admitted over defendant's objection that it was hearsay.[5]

█ The Court is of the opinion that the admission of this testimony is not ground for granting a new trial because:

█ 1. Barber's statement was admissible to explain his conduct in driving a truck different from the one regularly assigned to him.

2. The testimony could not have been prejudicially erroneous.

Georgia Code of Evidence, Anno., Chap. 38, Sec. 302, provides:

"When, in a legal investigation, information, conversations, letters or replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence.

This case was tried in Georgia, and the Court gave effect to the statute of that state under the authority of the provisions of Rule 43(a), F.R.Civ.P., that:

". . . . All evidence shall be admitted which is admissible under the . . . . rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs. . . ."

---

5. The record will speak for itself as to the exact language of the objections. There is no intention to add to or take from the objections as made.

The Georgia statute is not materially different from the general rule that a declaration made in connection with and as an explanation of an act is admissible as res gestae of the act. It is one of the instances when a statement standing alone would be inadmissible as hearsay, and yet be admissible when closely connected with other evidence competent in itself.

The defendant does not question the admissibility of the testimony that Barber came home from work in a truck that was not regularly assigned to him. That evidence was competent in itself. The statement as to the reason why he was using that truck was directly connected with and explanatory of his action. There was no reason to fabricate. He could not have envisioned this litigation at that time. The statement was made under circumstances which indicate every reason for its trustworthiness, and was therefore admissible.

If the Court made any mistake in connection with this evidence, it was in not admitting all of Barber's statement to Bobbie Barber on the occasion in question. But that action was in favor of the defendant. The plaintiff offered to prove by Mrs. Barber that the deceased said that he was driving the old truck because the one regularly assigned to him was in the shop for repairs to the steering mechanism. The Court refused to admit the part, "for repairs to the steering mechanism."[6] The exclusionary ruling was based upon the reasoning that the Georgia statute was closely akin to the res gestae rule, and that res gestae statements based on hearsay are generally not admissible. Lavender v. Kurn, 354 Mo. 196, 189 S.W.2d 253, reversed on other grounds, 327 U.S. 645, 651, 66 S.Ct. 740, 90 L.Ed. 716 (1945). The burden was on the party offering evidence to establish its admissibility, and there was no indication as to how Barber would have known of the defect unless the mechanic told him. Evidence

on this trial as to the nature of the defect supported that deduction. ". . . . Rulings on the admissibility of evidence must normally be left to the sound discretion of the trial judge in actions under the Federal Employers' Liability Act. . . ." Lavender v. Kurn, supra, at p. 654 of 327 U.S. at p. 744 of 66 S. Ct. Under the circumstances, the Court exercised its discretion in favor of culling from Barber's remark the reason he gave for his regular truck being in the shop, and admitted only the remainder of the statement.

If the Court erred in admitting the portion of Barber's statement above indicated, the error was harmless. A truck could be in a shop for many reasons. The defendant proved that it was in the shop on at least one occasion for work that had no relation to the steering mechanism. As the Court remarked at the time, the portion of Barber's statement actually admitted proved nothing more than was already in evidence.

The other complaint about the admission of evidence involves the testimony of plaintiff's witness, Gautreau, that R. E. Perry told him in April, 1969, that there had been trouble with the steering mechanism of Barber's truck prior to the accident. The defendant objected to such testimony on the ground that it was hearsay.

Perry, as head of the defendant's repair department, was a managerial agent of the railroad. The truck Barber was driving at the time of the collision was in his general custody. The statement complained of came after the accident, but during the pendency of the common-law negligence actions by the occupants of the other truck against the railroad. Gautreau, an accident analyst expert, had been hired to assist in the defense of those two cases. He thought it could be established that the accident resulted *solely* from a defect in the steering mechanism of the railroad's truck Barber was driving. It was to the

---

6. This quotation may not be literally correct, but it gives in substance the portion of the statement that the Court excluded.

interest of the railroad to prove that. It would win two serious lawsuits if it could. In the course of his investigation of the accident on behalf of the railroad, he went to Perry, the railroad employee having general responsibility for all trucks in the department in which Barber was working, and the managing agent most likely to know the history of trouble with them, and inquired whether there had been any trouble with the steering mechanism on the Barber truck prior to the accident. Perry answered in the affirmative.

■ The admissibility of statements of a corporate agent concerning a prior transaction or event in a suit against the corporation depends on whether the statements were made within the scope of the agent's employment. Compagnie De Navigation, etc. v. Mondial United Corp., 5 Cir., 316 F.2d 163, 170 (1963); Brown & Root, Inc. v. American Home Assur. Co., 5 Cir., 353 F.2d 113 (1965), cert. den. 384 U.S. 943, 86 S.Ct. 1465, 16 L.Ed.2d 541; Chicago, St. P. M. & O. Ry. Co. v. Kulp, 8 Cir., 102 F.2d 352 (1939), cert. den. 307 U.S. 636, 59 S.Ct. 1032, 83 L.Ed. 1518; Northwest Airlines v. Rowe, 8 Cir., 226 F.2d 365, 372 (1955); N.L.R.B. v. Gardner Construction Co., 10 Cir., 296 F.2d 146 (1961).

The two Fifth Circuit cases above cite McCormick, Evidence, # 244 (1954), with approval. The following is quoted from that text at p. 517:

" . . . . The early texts and cases used as analogies the doctrine of the master's substantive responsibility for the acts of the agent, and the notion then prevalent in evidence law that words accompanying a relevant act are admissible as part of the *res gestae*. Thus they formulated the theory that the agent's statements could be received against the principal only when made at the time of, and in relation to, some act then being performed in the scope of the agent's duty. This rather clumsy theory finds reflection in some current opinions, where the fashion lingers of testing the admissibility of the agent's statements by the test of 'res gestae.' A simpler theory seems to have gained wider currency in the later writings and opinions. This is the view that the evidential admissibility of the agent's statements as admissions of the principal is measured by precisely the same tests as the principal's substantive responsibility for the acts and conduct of the agent, that is, the words of the agent will be received in evidence as the admissions of the principal, if they were spoken or written within the scope of the authority of the agent to speak or write for the employer. . . ."

The following quotations are taken from Northwest Airlines v. Rowe, supra, 226 F.2d, at 372:

" . . . . However, as a corporation, like an individual, may make admissions after the event, and as a corporation can act only by its agents, officers or agents possessing the requisite authority may affect the corporation by statements subsequent to the event."

"If, however, the statement related to a matter with the sphere of his authority, and was made in the course of an investigation or negotiation concerning that matter, then, regardless of how he derived his knowledge, he spoke as and for his principal, and his statement was admissible."

■ The Court was of the opinion that Perry had at least implied authority to furnish information within his knowledge to an expert hired to investigate the accident in question on behalf of his employer railroad. The information furnished was what the railroad wanted at the time. It was beneficial to the company under the circumstances then existing. It supported the defense being urged on its behalf in the two common-law negligence actions then pending. It would be a strange situation where managerial agents of a railroad would not have authority to give pertinent information within their

knowledge to a person employed on behalf of the railroad to investigate and determine the cause of an accident involved in two serious damage suits against it. Perry's statement to Gautreau was admissible under the rule announced by the authorities above cited.

For the reasons stated the Court is of the opinion that the defendant's motion for new trial should be overruled.