283 F.2d 328
 James Earston WILES
v.
NEW YORK, CHICAGO AND ST.LOUIS RAILROAD COMPANY, a
Corporation, Appellant.
James Earston WILES, Appellant,
v.
NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, a Corporation.
 Nos. 12991, 13033.
 United States Court of Appeals Third Circuit.
 Argued Feb. 16, 1960.
Decided June 21, 1960, Rehearing Denied in No. 13033, July 18, 1960.
 
 Earl F. Reed, Jr., Pittsburgh, Pa. (Clyde A. Armstrong, Thorp, Reed & Armstrong, Pittsburgh, Ap., on the brief), for New Yor, C. & St. L.R. Co., defendant-appellant in 12991.
 John A. DeMay, Pittsburgh, Pa. (McArdle, Harrington & McLaughlin, Pittsburgh, Pa., on the brief), for James Earston Wiles, plaintiff-appellant in 13033.
 Before BIGGS, Chief Judge and STALEY and HASTIE, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 This is an action brought under the Federal Employers' Liability Act, 45 U.S.C.A. 51 et seq. resulting in an award of $10,000 for the plaintiff. The jury also awarded $20,000 for loss of earning power, but the court set aside this portion of the verdict. Both sides have appealed from the judgment of the court below. Wiles, the plaintiff, an employee of the defendant Railroad, has alleged that he received serious back injuries requiring three operations, including a laminectomy, when a jack which he was using to raise a hopper car, belonging to the Railroad, slipped, and, according to his testimony, threw him some fifteen feet. Wiles' superior, ertle, with whom Wiles was working, died prior to the trial, so we do not have the advantage of his testimony. Wiles testified that after the jack slipped, he marked it with yellow chalk in accordance with the Railroad's rule so that it would be repaired. The Railroad kept no record of defective tools and therefore it could not inspect the jack after receiving Wiles' claim nor could the jack be produced at the trial. The rules of the Railroad required any of its employees who had received injuries in the course of their employment to report such injuries immediately to the Company on a form supplied by it. Wiles admits that he did not make such a report but asserts that at the time he did not consider that the accident had caused him any serious injury.
 
 
 2
 The evidence given by Wiles as to his alleged injury was conflicting and much has been made of this by the Railroad both in oral argument and on its brief but in our opinion there was sufficient evidence to permit the case to go to the jury on the issue of the Railroad's negligence. It was the duty of the jury to resolve the conflicting testimony and it did so in favor of Wiles.
 
 
 3
 There also has been much contention between the parties as to whether the doctrine of res ipsa loquitur does or does not apply under the circumstances at bar.[1] Wiles testified that when he attempted to raise the hopper car by the jack, its stem or ratchet gave way. If this did occur, as the jury found it did, it was because of a defect within the covering of the jack and therefore not discernible unless the jack was disassembled and its parts inspected. Since the jack was under the defendant's exclusive control and since properly used jacks do not slip, Wiles asserts that the doctrine of res ipsa loquitur is applicable. The Railroad insists that the doctrine is not available to Wiles because his failure to notify it of the accident prevented the Railroad from finding the jack. It follows, asserts the Railroad, that the policy underlying the doctrine of res ipsa loquitur, namely that the chief evidence of the true cause of the accident is accessible to the defendant but inaccessible to the injured person, would not be served by permitting Wiles the use of the doctrine here.[2]
 
 
 4
 The classic exposition of the doctrine of res ipsa loquitur in the federal law, applicable here, is set out in San Juan Light & Transit Co. v. Requena, 1912, 224 U.S. 89, 98-99, 32 S.Ct. 399, 401, 56 L.Ed. 680, wherein the Supreme Court stated: 'When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.' See also Jesionowski v. Boston & Maine R.R., 1947, 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416. It is clear that under the circumstances of this case Wiles ordinarily would be entitled to the inference of negligence afforded by the res ipsa loquitur doctrine since the jack and its internal mechanism were under the Railroad's exclusive control and the accident was not one which would ordinarily occur in the absence of negligence. The Railroad's contention that Wiles' failure to report the accident immediately denied it the opportunity to inspect the jack and thus rebut the inference of negligence is unsound because Wiles immediately notified the Railroad of the defective tool, even though the accident was not reported for some months. Admittedly, the Railroad might have been in a better position if Wiles had reported the accident immediately, but Wiles testified that he did not realize that he was injured at the time of the accident and the jury apparently believed this testimony. Wiles may not be barred from the benefit of the res ipsa loquitur doctrine by a kind of 'estoppel' asserted here by the Railroad. The principle of Milom v. New York Central R.R., 7 Cir., 1957, 248 F.2d 52, certiorari denied 1958, 355 U.S. 953, 78 S.Ct. 537, 2 L.Ed.2d 529, is not applicable here for in that case the employee failed to report the accident even though he knew he had sustained serious injuries. We conclude therefore that the issue of the Railroad's negligence was properly one for determination by the jury.
 
 
 5
 Another and more difficult question remains for disposition, however. The trial court charged the jury in the customary form in respect to Wiles' damages. The usual evidence as to Wiles' earning power and capacity and life-expectancy was placed before it. There was medical testimony that Wiles, as a result of the three operations previously referred to, had substantial and ineradicable scars in the small of his back, and that he had a permanent, albeit minor, back deformity as a result of the accident. The evidence discloses that an operation for fusion was performed on Wiles for the purpose of producing a solid osseous bridge in his back so that it would be firm and stable. Subsequent X-rays showed that the bony material was being absorbed instead of growing and producing the solid bridge. There was also evidence that Wiles is presently employed by the Railroad as a car repairman at a larger salary than that which he was receiving at the time of the accident. But an expert medical witness, testifying on behalf of Wiles, stated that he would have difficulty in getting a job in heavy industry elsewhere than with the Railroad for most heavy-industry employers require physical examinations. Such an examination would compel Wiles to disclose the nature of his operations and that he had a history of disc protrusion and back fusion and these disclosures would militate against his securing employment.[3]
 
 
 6
 The court submitted an interrogatory to the jury on the issue of what portion of the amount of damages, if any were awarded to Wiles, were attributable to Wiles' loss of future earning power.[4] The jury returned a verdict of $30,000 in favor of Wiles; of which $20,000 was awarded as damages because of his loss of future earning power. The court below set aside that portion of the verdict attributable to Wiles' loss of future earnings on the ground that it was 'too speculative and therefore insufficient * * *'. The court went on to say: 'There is a complete absence of evidentiary facts on which the jury could intelligently assess the monetary difference between what plaintiff would have been able to earn in the future had he not been injured and what he will be able to earn in his physical condition during his work-life expectancy.'
 
 
 7
 We cannot agree with the conclusion reached by the ocurt below that Wiles was not entitled to the damages awarded him by the jury for loss of future earnings. The evidence that Wiles is employed by the Railroad at a larger salary than that which he was receiving when he was injured is a facet of the issue of damages which the jury was entitled to take into consideration as was the testimony that Wiles, with his present medical history, would have difficulty under the conditions of modern industry in obtaining gainful employment in heavy work except with his present employer. Wiles is presently employed by the Railroad but this will not prevent him from being discharged or from being laid off. Because of his present employment Wiles has not yet suffered economic loss but if he cannot obtain gainful employment elsewhere he is chained to his present job in a kind of economic servitude. We cannot think that it was the intention of Congress in enacting the Federal Employers' Liability Act to effect such a result. Certainly, Wiles' economic horizons have been limited by his injury. See Bochar v. J.B. Martin Motors, Inc., 1953, 374 Pa. 240, 97 A.2d 813. See also Rice v. Philadelphia Transportation Company, 1959, 394 Pa. 454, 147 A.2d 627; Stark v. Lehigh Foundries, Inc., 1957, 388 Pa. 1, 130 A.2d 123. The availability to Wiles of the labor market for heavy-duty workers was certainly a factor which the jury was entitled to take into consideration in fixing an amount for damages due to him for loss of future earning power. The fact that Wiles would be unlikely to leave the Railroad's employment and thereby lose his seniority rights was another significant factor to be weighed by the jury. All of the factors enumerated and others were before the jury and we cannot say that there was a significantly larger element of speculation in arriving at an estimate of Wiles' loss of future earnings than there would be in any ordinary instance requiring an estimate of damages by a jury. Since none of us is capable of foreseeing the future with any substantial degree of certainty every estimate of damages must contain elements of speculation.
 
 
 8
 The order of the court below granting the Railroad's motion for a directed verdict in favor of the Railroad as to the award of $20,000 to Wiles will be reversed. The cause will be remanded with the direction to enter judgment in favor of Wiles in the amount of $30,000. The judgment will be affirmed in all other respects.
 
 
 9
 HASTIE, Circuit Judge, dissenting in part, would affirm the judgment below in all respects.
 
 
 
 [1]
 At a pretrial conference Wiles was of the view that the application of the doctrine of res ipsa loquitur was ossential to his case. In effect he informed the judge conducting the pretrial proceedings that he would rely on the doctrine
 
 
 [2]
 See 38 Am.Jur., Negligence, 299; Milom v. New York Central R.R., 7 Cir., 1957, 248 F.2d 52, certiorari denied 355 U.S. 953, 78 S.Ct. 537, 2 L.Ed.2d 529
 
 
 [3]
 In pertinent part the examination in chief on this point was as follows:
 'Q. Are you familiar with the physical qualifications established by heavy industry, in the area for employment? A. Yes, I am.
 'Q. Doctor, Mr. Wiles has testified that he is able to do his work and that he has done his work for the last eight months, I believe. But in your opinion, Doctor, in the future should he cases his employment with the Nickel Plate Railroad and were he to seek employment elsewhere, in your opinion would he be qualified or pass a physical examination for such employment in heavy industry?
 'A. I believe that you would have to do some explaining before you answered this question. No. 1, with the history of disk protrusion and back fusion, generally you get word from the employer that he would not want to accept this back or this case on history alone. Then, we come up to the physical properties, where I might have some judgment, but I think that that would-- I mean they would not accept him if they could get someone that did not have a previous back injury. Let's put it that way. I think that is the fairest thing that I could say, to cover the problem.
 'Q. And of course that is assuming, as he has testified, that he has done his work and is able to do his work at the present time? A. Yes, sir.'
 The cross-examination was as follows:
 'Q. Would you say that Mr. Wiles is disqualified to perform the services in all thirty of * * * (the heavy) job classifications (of a local steel plant)? A. I said I tried to be fair about this. If he came as a new employee, with this history, I doubt if he would be accepted.
 'Q. You doubt it. But you don't say that he would be physically disqualified? a. No, I didn't say that.'
 The re-direct examination was as follows:
 'Q. Doctor, do you feel that the operative procedures that he has undergone have resulted in a disability in his back, of however minor a nature? A. Well, there isn't anyone who would say that anything that is repaired is as good as it was originally. * * * And there is, by the very nature of these things, naturally, some disability. But the fact that the man has returned to his work and is working very comfortably, I don't see that the disability carries into his working filed.'
 
 
 [4]
 The interrogatory reads:
 'what amount, if any, have you awarded plaintiff for future loss of earning power?'