**John DeCHICO, Plaintiff-Appellant, Cross-Appellee,**

v.

**METRO-NORTH COMMUTER RAIL-ROAD, Defendant-Appellee, Cross-Appellant.**

**Nos. 639, 843, Dockets 84–7762, 84–7802.**

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1985.

Decided March 29, 1985.

Charles C. Goetsch, New Haven, Conn. (Cahill, Goetsch & DiPersia, P.C., New Haven, Conn., of Counsel), for plaintiff-appellant, cross-appellee.

Charles A. DeLuca, Stamford, Conn. (Ryan, Ryan & Hickey, W. Patrick Ryan, Stamford, Conn., of Counsel), for defendant-appellee, cross-appellant.

Before FEINBERG, Chief Judge, and TIMBERS and CARDAMONE, Circuit Judges.

FEINBERG, Chief Judge:

Plaintiff John DeChico appeals from a judgment of the United States District Court for the District of Connecticut, Ellen Bree Burns, J., entered after a jury trial, finding Metro-North Commuter Railroad liable for $40,000 in an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. Appellant claims that the district court erred in refusing to instruct the jury to take inflation into account when computing the present value of his lump-sum award for pain and suffering and in refusing to allow the jury to consider impairment of future earning capacity as an element of his damages. The Railroad cross-appeals, assigning error to portions of the court's instructions on contributory negligence and to the court's refusal to give certain instructions relating to negligence. For reasons stated below, we affirm the judgment of the district court with respect to liability but reverse on the question of damages and remand for a new trial limited to the latter question.

### I.

In February 1983, while engaged in his duties as a shop superintendent employed by the Railroad, DeChico slipped and fell on a wet concrete ramp in the Railroad's Harmon Shop in Croton-on-Hudson, New York. As a result of his fall, appellant dislocated his kneecap, suffering an osteochondral fracture to the articular surface of his right patella. Soon after, appellant filed this FELA action against the Railroad, attributing his injury to his employer's negligence and failure to provide him with a safe place to work and seeking $400,000 in damages. The jury returned a verdict in favor of appellant and awarded him $40,000. No contributory negligence

was found. This appeal and cross-appeal followed.

## II.

Appellant's first claim is that the district court erred in refusing to instruct the jury to take inflation into account in reducing any award for future pain and suffering to present value. Past and future pain and suffering were the only elements of damages that the court permitted to go to the jury. In the written requests to charge that appellant submitted prior to trial, he proposed the following instruction:

Inflation should be considered in estimating present value of lost future wages. Although no particular rate is required when considering inflation, in estimating present value of lost future wages, it is suggested that two percent discount rate would normally be fair to both side. [sic] *Doca v. Marina Mercante Nicaraguense*, 634 F.2d 30 (2d Cir. 1980).

Apparently, neither party had offered any evidence relating to the proper discount rate or to an adjustment for inflation; there is also no indication that appellees would have objected to the use of the 2% interest rate authorized by *Doca* had the judge been willing to give such an instruction.

The court's charge, however, did not mention inflation. The court instructed the jury to reduce any award for future pain and suffering to its present value

by taking first the interest rate or return which the plaintiff could reasonably be expected to receive on investment of the lump sum payment together with the period of time over which the future loss is reasonably certain to be sustained, and then reduce or, in effect, deduct from the total amount of anticipated future loss whatever the amount would be reasonably certain to earn or return if invested at such a rate of interest over such future period of time and include in the verdict an award for only the present worth, that is, the reduced worth of the total anticipated future damage.

At the close of the charge, appellant took exception to the court's failure to instruct the jury to use a discount rate adjusted for future inflation. The court declined to charge the jury further on that point, although it gave a supplementary charge on other matters. The court's view was that while such an instruction might be appropriate when compensating for lost future earnings, it was not proper when an award was "for an intangible loss such as pain and suffering."

■ Relying on *United States v. Salas*, 387 F.2d 121 (2d Cir.1967), *cert. denied*, 393 U.S. 863, 89 S.Ct. 145, 21 L.Ed.2d 131 (1968), the Railroad apparently suggests that appellant should not be allowed to complain about the charge on this issue, because his initial written request to charge urged the consideration of inflation only with respect to an award for lost future earnings. That element of damages, as already indicated, was not submitted to the jury. However, we do not believe that appellant is barred from arguing that the trial court erred in refusing to instruct the jury to take inflation into account with respect to the present value of an award for future pain and suffering. The judge apparently gave both parties a copy of a complete FELA jury charge from another case as an example of what her charge would contain. That charge would have given appellant what he now seeks, and appellant was justified in relying on it. Under the circumstances, *Salas* is not controlling. In addition, appellant objected to the charge on the ground now raised immediately after the charge was given, and the court could easily have corrected the omission at that time.

■ The proper measure of damages in an FELA case "must be settled according to general principles of law as administered in the Federal courts." *Chesapeake & Ohio Ry. v. Kelly*, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916). We are therefore guided by a number of recent decisions that have explored the extent to which the likelihood of future inflation may be considered by a jury calculating the

present value of awards pursuant to federal tort statutes analogous to the FELA—the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950, and the Public Vessels Act, 46 U.S.C. §§ 781–790. At least since *Doca v. Marina Mercante Nicaraguense, S.A.,* 634 F.2d 30 (2d Cir.1980), *cert. denied,* 451 U.S. 971, 101 S.Ct. 2049, 68 L.Ed.2d 351 (1981), we believe it settled in this circuit that a plaintiff is entitled to an instruction requiring a jury to consider inflation when estimating the present value of future lost wages. As we noted in *Doca:*

> Discounting without regard to inflation charges the plaintiff for that portion of the prevailing cost of money that represents the lenders' anticipation of inflation without allowing the plaintiff an offsetting addition for inflation, either by increasing the sum to be discounted or reducing the discount rate....
>
> ... [S]ince discounting future lost wages to present value uses an interest rate that reflects inflation, the issue is not whether inflation is too speculative to be considered at all; it is whether inflation, as a component of interest rates, should be considered for the defendant (by discounting at the prevailing interest rate) but ignored for the plaintiff (by rejecting any compensating adjustment for inflation).

*Id.* at 37–38. Indeed, *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), a case under § 5(b) of the LHWCA, authoritatively recognized the need to consider inflation in awarding future lost earnings. *See also Culver v. Slater Boat Co.,* 722 F.2d 114, 117 (5th Cir.1983) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984).

■ The district court's rejection of appellant's proposed instruction was based upon the court's conclusion that inflation may be considered when an award compensates for lost future wages, but not when the award compensates for future pain and suffering. This view is contrary to the law in this circuit. A lump-sum award for fu-

ture pain and suffering, like an award for lost future wages, must be reduced to its present value because "[i]rrespective of the type of injury involved, the advantage of the present use of money is the same and should be taken into account in arriving at the proper amount of damages." *Chiarello v. Domenico Bus Service,* 542 F.2d 883, 887 (2d Cir.1976); *see Metz v. United Technologies Corp.,* 754 F.2d 63, 67 (2d Cir. 1985). And we have held that in applying a factor discounting an award for pain and suffering to its present value, the rate of discount should be "adjusted for inflation." *See Gretchen v. United States,* 618 F.2d 177, 181 (2d Cir.1980). Otherwise by recognizing only the need to discount to present value, a court allows economics to be used as "an instrument for the under-compensation of plaintiffs." *See Doca, supra,* 634 F.2d at 38.

*Doca* authorized district courts to account for inflation by using an adjusted discount rate of 2% in present value calculations, a rate based upon the apparently stable relationship between inflation and interest rates. 634 F.2d at 39–40; *see Feldman v. Allegheny Airlines, Inc.,* 382 F.Supp. 1271, 1293–95 (D.Conn.1974) (using 1.5% inflation-adjusted discount rate), *aff'd in relevant part,* 524 F.2d 384 (2d Cir. 1975). *Doca* also left parties free to present evidence on, or to stipulate to, alternative methodologies for taking inflation into account. Compare *Crane v. Consolidated Rail Corp.,* 731 F.2d 1042, 1051–52 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984).

The approach authorized by *Doca* remains viable in the wake of *Jones & Laughlin.* In the latter case, the Court examined a variety of ways a trier of fact seeking to discount the estimated stream of a plaintiff's future earnings could adjust its calculations to account for the effects of future inflation. While not particularly enthusiastic about the real interest rate approach sanctioned in *Doca, see* 462 U.S. at 548–49 & n. 30, 103 S.Ct. at 2556 & n. 30, the Court concluded that it did "not believe a trial court adopting such an approach in a suit under § 5(b) should be reversed if it

adopts a rate between one and three percent and explains its choice." *Id.* at 548–49, 103 S.Ct. at 2556.

 In this case, the district court was apparently willing to use the 2% real interest rate approach authorized by *Doca,* and suggested by appellant with no objection by appellee, but refused to give any instruction on inflation because of an erroneous view of the law. Accordingly, we believe that the judgment must be reversed. Appellee argues that the court's refusal to give the requested instruction was harmless error since the jury might well have drawn upon its collective knowledge and experience and recognized on its own the need to account for inflation in present value calculations. For the reasons pointed out in *Doca,* we do not agree that the error was harmless.

 Appellant also contends that the district court erred by refusing to allow the jury to consider impairment to future earnings capacity as an element of his damages. Appellant was able to return to his job as shop superintendent following his accident and eventually received a raise in salary in that position, so that he is now earning as much or more than he was at the time of the accident. Nevertheless, appellant argues that he is still entitled to damages for an impairment to his earning capacity if there is evidence indicating that he has permanent injuries that will restrict his future employment possibilities and make it more difficult for him to compete in the open labor market.

There may well be cases in which the likelihood that a plaintiff with a permanent injury will eventually leave his present job and be forced to compete in an unreceptive labor market is sufficiently great to allow that plaintiff to seek compensation for the limitations placed upon his economic horizons. *See Wiles v. New York, Chicago & St. Louis, R.R.,* 283 F.2d 328, 331–32 (3d Cir.), *cert. denied,* 364 U.S. 900, 81 S.Ct. 232, 5 L.Ed.2d 193 (1960). In this case, however, appellant indicated that he expected to continue in his capacity as shop superintendent and that, moreover, he would be able to exercise his seniority rights as a foreman or supervisor if he were ever removed from his current position. Any suggestion that appellant might be forced to leave his regular employment with the Railroad was too speculative to have supported a damage award on that theory. As appellant himself noted, any thought he might have had about going into business on his own was never more than a "dream." On the record before us, therefore, the district judge was justified in refusing to submit this theory to the jury.

*Anello v. Murphy Motor Freight Lines,* 525 F.2d 276 (2d Cir.1975), and *Fleming v. American Export Isbrandtsen Lines,* 451 F.2d 1329 (2d Cir.1971), on which appellant relies, are not to the contrary. In *Anello,* plaintiff actually had been forced to change jobs and the lower salary he received at his new job might well have been attributed to his injury. In *Fleming,* plaintiff presented ample evidence to suggest that his injury had forced him to stop working as a carpenter and to accept another job at lower wages.

### III.

 On the Railroad's cross-appeal, it claims that the district court erred in instructing the jury that plaintiff had not assumed the risks of his employment. This instruction is a correct statement of law, since 45 U.S.C. § 54 plainly eliminates assumption of risk as a defense in FELA actions. *See Tiller v. Atlantic Coast Line R.R.,* 318 U.S. 54, 58, 63 S.Ct. 444, 446, 87 L.Ed. 610 (1943). Nevertheless, the Railroad never raised this defense, and "[o]rdinarily it is a mistake to give instructions on subjects not directly in issue in a case." *Clark v. Pennsylvania Railroad,* 328 F.2d 591, 595 (2d Cir.), *cert. denied,* 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964). An assumption of risk instruction may be particularly inappropriate in cases where it "might well cause such confusion as to water down or even eliminate the issue of contributory negligence." *Id.* The practice has therefore generally been condemned. *See Clark v. Burlington North-*

*ern, Inc.*, 726 F.2d 448, 452 (8th Cir.1984); *Heater v. Chesapeake & Ohio Ry.*, 497 F.2d 1243, 1249 (7th Cir.), *cert. denied*, 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974). Nevertheless, although it would have been better had the instruction not been given, we do not believe that there was reversible error here. The court's charge on contributory negligence stated an employee's duty of care with sufficient clarity to make the danger of jury confusion negligible.

 The Railroad also argues that the judge erred in the instruction on contributory negligence by stating: "The plaintiff's negligence may have been too slight or inconsequential to be regarded...." This quotation, however, distorts the meaning of the entire sentence from which it is taken:

> The plaintiff's negligence may have been too slight or inconsequential to be regarded, if you find that the injury would have happened whether or not the plaintiff had been negligent, his negligence would not be a cause of the injury.

This sentence appears merely to state the unassailable rule that a causal connection must be shown between plaintiff's negligence and his injury before contributory negligence can be found. 2 F. Harper & F. James, *The Law of Torts* § 22.2 at 1199 (1956). Certainly, when placed in the context of the court's entire instruction on contributory negligence, the language complained of did not constitute reversible error.

 Finally, the Railroad maintains that the district court erred in failing to instruct the jury that defendant was not required to furnish its employees with the "latest, best or most perfect place within or upon which to work" and that defendant could not be held responsible for injuries resulting from the mere existence of ice and snow. We disagree. The central liability question in this case was whether the Railroad had taken reasonable precautions to ensure that unavoidable accumulations of ice, snow and water would not create hazardous conditions inside the shop where De-Chico was working. The district court was justified in refusing to give instructions that might tend to deflect the jury's attention from this question.

For the reasons stated above, the judgment of the district court is affirmed with respect to liability, but reversed with respect to damages; the case is remanded for a new trial limited to the question of damages.